MICHAEL MINICOZZI *v.* THE ATLANTIC REFINING COMPANY

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued February 8—decided February 28, 1956

*Nicholas Katzenbach* and *Nelson Harris,* with whom was *Joseph R. Apter,* for the appellant (plaintiff).

*David M. Reilly,* with whom was *David M. Reilly, Jr.,* for the appellee (defendant).

INGLIS, C. J.   This is an appeal by the plaintiff from the denial of his motion to set aside a nonsuit and from the judgment of nonsuit rendered in an action for personal injuries.   The appeal from the judgment was mere surplusage and added nothing.   *Hannon* v. *Waterbury,* 106 Conn. 13, 14, 136 A. 876; Maltbie, Conn. App. Proc., § 118.   The exclusive method of attacking the court's action in

rendering a judgment of nonsuit is to appeal from the denial of the plaintiff's motion to set aside the judgment. General Statutes, Cum. Sup. 1955, § 3183d.

The material allegations of the complaint are these: Preparatory to the execution of a formal lease between himself as lessee and the defendant as lessor, the plaintiff was operating, on January 17, 1952, a gasoline station owned by the defendant. The rent to be paid under the contemplated lease was to be obtained by an additional charge on each gallon of gasoline purchased by the plaintiff from the defendant. The defendant had placed the tools appurtenant to the station, including a certain socket wrench, at the disposal of the plaintiff and had both impliedly and expressly represented to him that the tools were in good shape and fit for use in the business of a gasoline station. These representations were made recklessly, without regard for their truth and without the examination that should have been made. The defendant should have known in the exercise of due care that the socket wrench was defective. On January 17, 1952, the plaintiff commenced to use the wrench while fixing a universal joint on an automobile. The locking device of the wrench was improper, and as a result the plaintiff was struck in the right eye by a portion of the wrench, causing the loss of the eye. The defendant was negligent in that (a) it permitted the plaintiff to go into possession of the tools, knowing that he would use them without first using reasonable care to see that they were in good shape; (b) it supplied a defective wrench to the plaintiff, knowing that the defect would cause danger; (c) it made oral representations, to be relied upon, as to the quality of the tools, without regard to the truth

thereof; and (d) it failed to examine the tools both visually and by use before turning them over to the plaintiff.

Upon the evidence, taken in the light most favorable to the plaintiff, the jury might reasonably have found the following facts: On January 5, 1952, it was orally agreed between the plaintiff and a representative of the defendant that the defendant would lease a gasoline station on State Street in New Haven to the plaintiff and he would operate it on a so-called commission basis. This agreement was later reduced to writing, partly on January 11 and partly on January 28. It provided that the plaintiff would purchase from the defendant all gasoline and lubricants to be sold on the premises, paying for the lubricants net prices to be fixed by the defendant, and for the gasoline its retail price less four and one-half cents per gallon discount. The station was to be leased to the plaintiff for one year, the rental to be one and one-half cents for each gallon of gasoline delivered. The property leased included the "equipment and apparatus" at the station, and the plaintiff agreed to "maintain and make all repairs and replacements needed to the leased premises and the said equipment and apparatus." In case any of the equipment or apparatus was damaged, lost or stolen, he was to replace or repair it. For the inventory of merchandise which the plaintiff took over and for the use of the equipment, he was to pay $10 per month and a sum equal to one-half of one cent on each gallon of gasoline delivered. A representative of the defendant told the plaintiff before he went into possession of the station that everything in the place, except the grease gun hose, was in perfect condition. Included in the equipment was a socket wrench. The plaintiff went into posses-

sion of the gasoline station and its equipment on January 11, 1952. On January 17 he was engaged in repacking with grease the universal joint of an automobile. To do this, it was necessary for him to unscrew the nuts from eight bolts. For this, he used an open-end wrench. After completing the repacking, he undertook to replace the nuts on the bolts. For this operation he used a socket wrench which he took from the collection of tools that went with the station. As he was tightening one of the nuts, the socket wrench struck him in the eye. A few moments after the accident, the plaintiff and a friend examined the socket wrench and found that "it wouldn't hold right when you tightened it down on the nut, it looked kind of worn." The plaintiff had not previously used the wrench, and at the time he took over the station it was in the same condition as when he examined it after the accident.

The occasions upon which a nonsuit may properly be granted are rare. Such a disposition of a case may be resorted to only when a plaintiff has failed to make out a prima facie case, that is, when the evidence produced by the plaintiff, if fully believed, would not permit the trier in reason to find the essential issues on the complaint in favor of the plaintiff. General Statutes § 7977; *Crowell* v. *Palmer*, 134 Conn. 502, 505, 58 A.2d 729; *Rappaport* v. *Rosen Film Delivery Service, Inc.*, 127 Conn. 524, 527, 18 A.2d 362.

It is fundamental that a plaintiff is entitled to judgment only if the evidence makes out the cause of action stated in the complaint. To determine whether the plaintiff in the present action had made out a prima facie case, we therefore must first ascertain just what was the cause of action alleged in his complaint. Until that is done it is impossible

to say whether the plaintiff had produced evidence proving prima facie the essential elements of his cause of action. On his brief the plaintiff has argued that the evidence would support a verdict in his favor on any one of four causes of action. In the first place, he says that the evidence would have warranted a verdict in his favor on the ground that there had been a breach of the warranty of fitness of the wrench implied from the sale of it by the defendant to the plaintiff. In the second place, he contends that the evidence showed liability on the part of the defendant since it, as the employer of the plaintiff, failed to use reasonable care to furnish a reasonably safe tool to him. Both of these claims are irrelevant because the complaint alleges neither a sale of the wrench to the plaintiff nor the existence of an employer-employee relationship between the parties.

One cause of action which is fairly alleged in the complaint, however, is that a bailor-bailee relationship existed between the defendant and the plaintiff with reference to the wrench by which the plaintiff was injured, that the bailment was for the mutual benefit of the parties and that the defendant had failed to use reasonable care to see that the wrench was reasonably safe for use. It is a well-established principle of law that one who supplies tangible personal property to another for a use in which the supplier has a business interest owes a duty to the other to use reasonable care to see that the property supplied is safe for its intended use. Prosser, Torts (2d Ed.) pp. 491, 492; Restatement, 2 Torts § 392. This duty to exercise reasonable care includes the duty of reasonable inspection of the property supplied. Restatement, 2 Torts § 392, comment b; see *Cavanaugh* v. *Windsor Cut Stone*

*Corporation,* 80 Conn. 585, 590, 69 A. 345; *Rincicotti* v. *O'Brien Contracting Co.,* 77 Conn. 617, 620, 60 A. 115.

The evidence introduced by the plaintiff was such as to bring the case within this rule. Upon the evidence, the trier might reasonably have found that the defendant supplied the plaintiff with the socket wrench for use in connection with the gasoline station leased by the defendant to the plaintiff. This bailment was for the benefit of the defendant in that it was receiving compensation for the use of the wrench and also in that its use promoted sales of the defendant's products. There was evidence to the effect that on January 17 the wrench was defective in that it was worn and would not hold. The jury could reasonably have inferred that it was in that condition when it was supplied to the plaintiff. From the fact that the defect was apparent to the plaintiff and his friend when the wrench was inspected by them, the jury might reasonably have concluded that either the defendant had knowingly supplied a defective wrench or had failed to make a reasonable inspection of it. They might also have concluded, therefore, that the defendant had failed to use reasonable care to see that the wrench was reasonably safe for the use for which it was intended when it was supplied by the defendant. They could reasonably have found that the defect in the wrench was a substantial factor in producing the plaintiff's injury. It follows that the plaintiff's evidence made out a prima facie case and that a nonsuit should not have been entered. The court erred in denying the plaintiff's motion to set aside the judgment of nonsuit. It is not necessary to consider the further contention of the plaintiff that he had made out a prima facie case of negligent representa-

tion by the defendant's representative as to the safety of all of the equipment of the station.

There is error, the judgment is set aside and the case is remanded to be proceeded with according to law.

In this opinion the other judges concurred.